UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM LUCAS,<br>    *Plaintiff*,<br><br>    v.<br><br>ANGEL QUIROS, et al.<br>    *Defendants.* | No. 3:24-cv-1719 (MPS) |

**INITIAL REVIEW ORDER**

The plaintiff, William Lucas, is a sentenced *pro se* inmate at Brooklyn Correctional Institution within the custody of the Department of Correction ("DOC").[1] He filed this civil rights complaint, alleging violation of his rights under the United States Constitution, the Americans with Disabilities Act, and the Connecticut Constitution while he was previously housed at MacDougall-Walker Correctional Institution ("MacDougall"). Compl., ECF No. 1. He names as defendants Commissioner Angel Quiros, Regional Chief Operations Officer ("RCOO") Jennifer Cruz, Nursing Supervisor Tawana Furtick, Medical Staff Jane Doe 1-3, Jane or John Doe Lieutenant, Correction Officer Thayer, and Correction Officer John Doe 5. He seeks damages and equitable relief.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the court must dismiss the complaint,

---

[1] The Court may "take judicial notice of relevant matters of public record." *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The Connecticut DOC website shows that Plaintiff was sentenced to four years of incarceration on February 7, 2023. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=348059

1

or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. §1915A.

I.     **Allegations**

The Court summarizes the alleged facts to provide a context to this initial review.

Plaintiff was injured while playing soccer at the MacDougall gym in March 2024. He was hit with extreme force by another opponent and hit the floor on his hip. Despite his extreme pain, Plaintiff forced himself up onto one leg and was able to hop off of the playing field.

When he sat down, Plaintiff noticed his leg had stiffened and become rigid while his right foot looked abnormally curved inward. Plaintiff requested an inmate gym worker to tell the correction officer to call the medical unit and to report the incident.

After the inmate did so, the staff member did not call a "Code White" for a medical emergency but instead called the medical unit on the phone as if it was a routine request. After a significant amount of time, medical staff Doe 1 arrived at the gym along with an inmate certified nursing assistant ("CNA") student pushing a wheelchair.

Plaintiff was informed that the gym officer did not want to stop the game by calling a Code White. Plaintiff had to stand and sit in the wheelchair, causing him painful pressure on his right hip. He believed that if the gym officer had called a Code White, medical staff would have arrived sooner and used a stretcher that would have minimized any adverse impact on his hip.

When he arrived at the medical area, Doe 1 made Plaintiff stand up and maneuver his way up onto an examination table. Plaintiff claims this action likely caused him further injury.

Plaintiff informed Doe 1 that he was experiencing extreme pain in his hip and groin. Doe 1 assessed that Plaintiff's hip was not dislocated but did not provide any formal examination or X-ray and refused to call a doctor. She stated that it was simply a bone bruise. She dismissed Plaintiff's complaint that something was wrong with his hip even though he advised her that he could not put any pressure or weight on his right hip without suffering sharp and extremely severe levels of pain. In response, Doe 1 did not order any X-ray or refer him to an orthopedist. Instead, she ordered a narcotic pain reliever for his pain.

She later passed Plaintiff on to Doe 2, who worked in the infirmary. Doe 2 made Plaintiff sit in the wheelchair until the pain medication started to take effect. She then asked him if the pain medication had helped. Plaintiff reported the medication had not helped him. But she took no action to have him properly diagnosed beyond mere speculation about the extent of his injury.

Doe 2 also ordered Plaintiff to get out of the wheelchair and put weight on his right leg. She deliberately ignored the fact that he could not stand without assistance from two CNAs, and that he was standing on his left leg. Plaintiff tried to comply with her instruction to put weight on his right leg, but the severity of the pain prevented him from being able to do so for any period of time, and he almost fell down. Nonetheless, Doe 2 decided that Plaintiff was fine and ordered him to return to his cell, which was on the top-tier of his housing unit.

Plaintiff advised Doe 2 that he could not endure walking up the stairs to his cell as he could not put weight on his right leg. He pleaded with her to provide him a proper evaluation and X-rays or at least the use of a crutch to prevent further injury and help him get up from his bunk to use the restroom.

Doe 2 responded again that he was fine and did not need a crutch. She ordered his return to his housing unit. Plaintiff was only able to get back into the wheelchair with the assistance of

the two CNAs, one of whom pushed him back to his housing unit and left him at the bottom of the stairs holding on to the railing. Plaintiff used the railing to pull himself up the stairs despite his extreme pain (even though he been provided with intravenous pain medication).

When he reached his cell, he had to ask his cellmate to open the door wide enough for him to grab onto the door. Once inside his cell, Plaintiff had to hold the toilet and shelving unit to make it over to his bunk. He could not sit on the bed without assistance from his cellmate. Due to his injury, Plaintiff had to have his cellmate remove his shoes and socks. He could not even lift the weight of his legs up onto the bunk. His pain kept him awake all night.

At approximately 8 AM, Plaintiff asked his cellmate to request the correctional officer to call the medical unit. After medical staff agreed to see Plaintiff, he descended the stairs. But medical staff refused to provide him with a wheelchair to bring him to the medical unit, which was about a quarter mile from his housing unit.

Plaintiff insisted that the CNA return to the medical unit with a wheelchair. Later, at the medical unit, the nurse in charge insisted that there was nothing wrong with Plaintiff's hip except maybe a bone bruise. She stated it was not broken or dislocated, although she had not conducted a proper examination and she is not a qualified orthopedic practitioner.

Plaintiff insisted that something was seriously wrong with his hip as the pain had spread outward to his groin. The nurse agreed to call an ambulance to transport Plaintiff to the hospital. He was then wheeled to the Admissions and Processing area. Doe 4 ordered Plaintiff to dress in the tight, ill-fitting orange jumpsuit without assistance and for him to be fully restrained in a standard inmate transportation setup with no modifications for his injury.

The standard inmate transportation restraints include heavy chains around the inmate's waist connected to a device known as the "black box." A waist chain and tether chain attached to

foot shackles are attached to the black box. Under this restraint system, the inmate must shuffle slowly placing all body weight on both feet. Plaintiff asserts that Defendants Doe 4, Doe 5 and Thayer were all involved with securing Plaintiff for his transport to the hospital.

Upon arrival at St. Francis Hospital, Plaintiff received an X-ray of his hip confirming he had broken his hip in two separate places, including the femur bone connected to his hip bone.

The doctor ordered medical staff to cutoff the orange jumpsuit so that he could administer immediate medical treatment without causing further injury. Defendants Thayer and Doe 5 prevented medical staff from cutting off the orange jumper, despite the doctor's insistence that the jumper needed to be cut off to prevent Plaintiff from enduring extreme pain or injury aggravation. Ultimately, Plaintiff's jumper was not cut off of him, and he experienced needless pain and suffering and required otherwise unnecessary pain medication.

The doctors assessed that Plaintiff required a hip replacement. After Plaintiff's discussion with the doctors, the doctor decided to attempt a repair of both fractures and determine later whether Plaintiff needed a hip replacement.

Plaintiff underwent a surgical repair and had an extended period of hospitalization. When he returned to MacDougall, he remained in the infirmary for period of time.

### III.    DISCUSSION

Plaintiff asserts violation of his rights under the Eighth Amendment, Fourth Amendment, the Americans with Disability Act, and the Connecticut Constitution. The Court first considers his claims under the Eighth Amendment.

Section 1983 of Title 42 provides that "[e]very person who, under color of any statute ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

injured….'" "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States,'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)), such as Eighth Amendment rights.

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991)). This is true with respect to supervisory officials as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (A plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" in order to hold a state official liable for damages under § 1983. "[I]t is not enough for [a plaintiff] to show that [a defendant] was negligent, or even grossly negligent, in her supervision of the correctional officers or in failing to act on the information she had.").

Plaintiff asserts no facts or claims against Jane or John Doe Lieutenant. As no allegations indicate Jane or John Doe Lieutenant violated Plaintiff's federal or constitutional rights, the Court will dismiss any claims for damages against Jane or John Doe Lieutenant from this action.

**Eighth Amendment Deliberate Indifference**

Prison officials violate the Eighth Amendment if they are deliberately indifferent to the serious medical needs of a sentenced prisoner. *See Darby v. Greenman*, 14 F.4th 124, 128 (2d

Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prevail on an Eighth Amendment claim, the prisoner must show that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)). A prisoner must allege facts to suggest that the defendants acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. *Dunbar v. Dep't of Correction*, No. 3:22-CV-627 (JAM), 2023 WL 143164, at *5 (D. Conn. Jan. 10, 2023). It is not enough to allege medical malpractice unless the malpractice involves culpable recklessness—actions that evince a conscious disregard of a substantial risk of serious harm. *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

To be "sufficiently serious," the deprivation of medical care must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hill*, 657 F.3d at 122. Where a prisoner receives some care, but allegedly inadequate care or a delay in the care, the court's consideration of the seriousness of the plaintiff's condition must examine both the prisoner's medical conditions and the harm caused by the offending conduct. *Lombardo v. Graham*, 807 F. App'x 120, 123 (2d Cir. 2020) (courts examine both the seriousness of the prisoner's medical conditions and the harm caused by any unreasonable delay).

"[A]n inmate seeking to establish an Eighth Amendment violation for failure to protect or deliberate indifference to safety must prove (1) that [the prisoner] is incarcerated under conditions posing a substantial risk of serious harm, and (2) that the prison official had a sufficiently culpable state of mind, which in prison-conditions cases is one of deliberate

7

indifference to inmate health or safety." *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (*per curiam*).

In both instances, the prisoner must allege facts to suggest that the defendants acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. In other words, Plaintiff must allege that a defendant was aware of a substantial risk that he would be seriously harmed if he or she did not act. *See, e.g.*, *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012) (*per curiam*); *Collazo*, 656 F.3d at 135. But "[o]fficials need only be aware of the risk of harm, not intend harm. And awareness may be proven from the very fact that the risk was obvious." *Spavone*, 719 F.3d at 138.

For purposes of initial review, Plaintiff's allegations are sufficient to satisfy the objective element of the Eighth Amendment analysis. With respect to the subjective element, Plaintiff's allegations suggest that Doe 1 and 2 acted with medical indifference to his serious medical needs when they failed to take steps to diagnose and treat his serious hip injury. Plaintiff has also sufficiently alleged facts to support an inference that Defendants Thayer, Doe 4 and Doe 5 acted with deliberate indifference to his health and safety when they required him to put on his orange jumpsuit without assistance and secured him in a heavy restraint system without regard for his pain and serious injury. Likewise, Plaintiff's allegations suggest that Defendants Doe 4 and Thayer acted with deliberate indifference to his health and safety when they ignored the doctor's assessment of Plaintiff's condition and refused to cut off his orange jumpsuit.

Accordingly, Plaintiff may proceed on his Eighth Amendment individual capacity claims against Doe 1 and Doe 2 for deliberate indifference to Plaintiff's medical needs and against Doe 4, Doe 5 and Thayer for their deliberate indifference to Plaintiff's health and safety.

**Eighth Amendment Excessive Force**

Plaintiff claims that Doe 4, Doe 5 and Thayer's use of restraints during his medical transport constituted an illegal seizure in violation of the Fourth Amendment. However, Plaintiff's complaint concerning the use of high-level use of restraints during his transport arises under the Eighth rather than the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 n.13(1989) (noting the Eighth Amendment provides constitutional protection to "convicted prisoners against excessive force is ... that provided by the Eighth Amendment."). *See e.g.*, *Petion v. Chevalier*, No. 3:22-CV-1646 (OAW), 2023 WL 8358065, at *2 (D. Conn. Dec. 1, 2023) (analyzing inmate's claim arising from use of restraints under Eighth Amendment and dismissing "Fourth Amendment claim … because his placement in restraints did not constitute a 'seizure' within the meaning of the Fourth Amendment.").

To allege an Eighth Amendment excessive force claim, Plaintiff must show that the force employed by a defendant was not "applied in a good-faith effort to maintain or restore discipline" but was done "maliciously and sadistically to cause harm," and that the harm done was objectively serious enough to violate Plaintiff's constitutional right to be free from such harm. *See Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000). The use of restraints does not violate the Eighth Amendment unless it lacks "penological justification, [is] grossly disproportionate, or involve[s] the unnecessary and wanton infliction of pain." *See Delgado v. Bezio*, 2011 WL 1842294, at *7 (S.D.N.Y. May 9, 2011) (citation omitted).

Here, Plaintiff alleges that he was subjected to a high-level of restraints with an injury that impaired his mobility. These allegations are sufficient to raise an inference that Defendants applied an excessively high-level restraints under the circumstances, and thereby, lacked a legitimate safety and security reason. *See Sanchez v. Bell*, No. 3:22-CV-1087 (SVN), 2023 WL 363045, at *3 (D. Conn. Jan. 23, 2023) (permitting Eighth Amendment claim to proceed based on lieutenant's order for plaintiff's segregation). Accordingly, Plaintiff may proceed on his Eighth Amendment excessive force claims against Defendants Doe 4, Doe 5 and Thayer in their individual capacities.

**Supervisory Liability**

Plaintiff asserts that Commissioner Quiros, RN Furtick, RCOO Cruz, and Doe 3 are responsible for the supervision, training and discipline for the medical staff at MacDougall. He claims that they have failed to "propound, promulgate and enforce, including by disciplinary actions, policies, procedure and practices to put an end to the pattern and practice of medical staff members at MacDougall being deliberately indifferent to an inmate's medical needs[.]" Compl. at ¶ 116. Thus, Plaintiff seeks to hold these supervisory Defendants liable for the medical staff's conduct.

The Second Circuit has held that "there is no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Rather, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Mere awareness of facts that may give rise to a claim is not sufficient to state a claim for supervisory liability. *See id.* at 619.

Plaintiff does not plead any facts that give rise to an inference that Commissioner Quiros, RN Furtick, RCOO Cruz, and Doe 3 were personally involved in an alleged deliberate indifference to his medical needs concerning his hip injury and unconstitutional treatment.[2]

Therefore, Plaintiff's individual capacity claims under 42 U.S.C. § 1983 against Commissioner Quiros, RN Furtick, RCOO Cruz, and Doe 3 are dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for lack of personal involvement.

**Official Capacity Claims Under 42 U.S.C. § 1983**

Plaintiff seeks an injunctive orders against Defendants.

A plaintiff may proceed for injunctive or declaratory relief against a defendant in his or her official capacity only to the extent he alleges an ongoing constitutional violation. *See Va. Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846–47 (1994)).

Plaintiff's claims proceeding in this action are against DOC employees who work at MacDougall. Because Plaintiff is no longer housed at MacDougall, his requests for official capacity relief against such Defendants are moot. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility). Moreover, Plaintiff's complaint does not raise any suggestion of ongoing constitutional violation that may be remedied by official capacity relief.

---

[2] For the same reason, Plaintiff cannot hold Commissioner Quiros liable for damages on the basis of the alleged staff conduct violating the Eighth Amendment.

11

Additionally, any claims based on constitutional violations for money damages against Defendants in their official capacities are dismissed as barred by the Eleventh Amendment, as all Defendants are state employees. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Accordingly, Plaintiff's claims under 42 U.S.C. § 1983 against Defendants in their official capacities are dismissed.

**Disability Discrimination**

Plaintiff alleges that Doe 1 and 2 violated his rights under the ADA when they refused to provide him an assistive device such as a crutch to assist his ability to walk, climb the stairs, and get off of his bunk. The Court construes Plaintiff's complaint to assert a claim under the Rehabilitation Act ["RA"] because "the standards under both [ADA and RA] are generally the same[.]" *Wright N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).[3]

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a violation of Title II, a plaintiff must demonstrate (1) he or she is a qualified individual with a disability; (2) the defendants are subject to the ADA; and (3) he or she was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of [his or her] disabilities." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

Under the ADA Amendments Act ("ADAAA"), impairments "lasting or expected to last less than six months" can qualify as an actionable disability under the ADA. *Hamilton v.*

---

[3] Where, as here, any subtle distinctions between the statutes are not implicated, courts "'treat claims under the two statutes identically.'" *Id.* (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).

*Westchester Cnty.*, 3 F.4th 86, 92–93 (2d Cir. 2021). The ADA defines "disability" to include, *inter alia*, "a physical or mental impairment that substantially limits one or more major life activities." *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020) (quoting 42 U.S.C. § 12102(1)(A)). "Major life activities" include, *inter alia*, standing, walking, and caring for oneself. *See* 28 C.F.R. § 35.108(c)(1)(i).

For initial pleading purposes, Plaintiff has sufficiently alleged he is a qualifying individual under the ADA. "A qualified individual can base a discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation marks omitted).

As Plaintiff alleges that he requested crutches for his climbing up the stairs to his housing unit, walking to his cell, and lifting off of his bunk, the Court construes Plaintiff's complaint to suggest that he was refused a reasonable accommodation to assist with his major life activities. A reasonable accommodation "gives the otherwise qualified plaintiff with disabilities 'meaningful access' to the program or services sought." *Henrietta*, 331 F.3d at 282 (quoting *Alexander v. Choate*, 469 U.S. 287, 301 (1985)). "[T]he demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to those with and without disabilities is sufficient to sustain a claim for a reasonable accommodation." *Id.* at 277. At this early stage in the litigation, Plaintiff's complaint sufficiently alleges a violation of the ADA and RA on the grounds of the failure to provide him any reasonable accommodation to enable him to ambulate, climb up the stairs, and lift himself off of his bunk.

However, "[n]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Scis. Ctr. Of*

*Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). Plaintiff's ADA and RA claims against state officials in their official capacities are essentially claims for damages against the state that are barred by the Eleventh Amendment. *See Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020). So those claims are dismissed.

### Connecticut Constitutional Claims

Plaintiff asserts claims under Article First, §§ 1, 7, 8, 9, and 20 of the Connecticut Constitution. In *Binnette v. Sabo*, 244 Conn. 23 (1998), the Connecticut Supreme Court recognized a private cause of action for monetary damages against municipal police officers for violations of Article First, §§ 7 and 9 of the Connecticut Constitution arising from unreasonable search and seizure and unlawful arrest. *Id.* 41-47. In reaching its decision, the Connecticut Supreme Court relied on *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and "emphasize[d] that [its] decision to recognize a *Bivens*-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution." *Id.* at 47. Here, Plaintiff's claims present new contexts for a cause of action under the Connecticut Constitution, and because recognizing such a cause of action presents a novel and complex issue of state law, the Court declines to exercise supplemental jurisdiction over the state constitutional claims and dismisses them without prejudice to the plaintiff's right to pursue them in state court. *Gothberg v. Town of Plainville*, 148 F. Supp. 3d 168, 187–88 (D. Conn. 2015) (declining to exercise supplemental jurisdiction over state constitutional claim under Article First, § 8); *Woolard v. Santiago*, No. 3:19CV1256 (VLB), 2020 WL 2079533, at *11 (D. Conn. Apr. 30, 2020) (declining jurisdiction for claims concerning inmate's confinement under section 9); *Richard v. Strom*, No. 3:18-CV-1451 (CSH), 2018 WL 6050898, at *8 (D. Conn. Nov. 19, 2018) (concluding "[t]here is no established private right of action under the religious discrimination, due process, or

equal protection provisions (Article First, Sections 3, 8, and 20); *Doe v. Crowley v. Town of Enfield*, No. 3:14 cv 01903 (MPS), 2015 WL 4162435, at *3 (D. Conn. July 9, 2015) (declining to recognize a private right of action under Article First, Sections 8 and 20); *see also Lopez v. Smiley*, 375 F. Supp. 2d 19, 26 (D. Conn. 2005) (refraining from exercising supplemental jurisdiction over novel and undeveloped state constitutional claims under Article I). Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state constitutional claims under 28 U.S.C. § 1367(c)(1). Such claims are dismissed without prejudice.

**ORDER**

The Court enters the following orders:

(1) The case shall proceed on Plaintiff's claims of (1) Eighth Amendment for deliberate indifference to Plaintiff's medical needs against Doe 1 and Doe 2 in their individual capacities; (2) Eighth Amendment deliberate indifference to his health and safety against Doe 4, Doe 5 and Thayer in their individual capacities; and (3) Eighth Amendment excessive force against Doe 4, Doe 5 and Correction Officer Thayer in their individual capacities.

The Court declines to exercise supplemental over Plaintiff's state constitutional claims under 28 U.S.C. § 1367(c)(1), and such claims are dismissed without prejudice.

All other claims are DISMISSED without prejudice. Defendants Jane or John Doe Lieutenant, RN Furtick, RCOO Cruz, Quiros, and Doe 3 are DISMISSED from this action.

This order is without prejudice to the Defendants filing a motion to dismiss the remaining claims once the Defendants appear.(2) The clerk shall verify the current work address of Correction Officer Thayer with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to the confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th)**

**day** after mailing. If Defendant Thayer fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on Defendant Thayer, who shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk is instructed to prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal Service is directed to effect service of the complaint and this Order on Commissioner Quiros in his official capacity at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(4) The clerk cannot effect service on any Doe Defendant without that defendant's full name and current work address. Thus, Plaintiff is directed to obtain this information for the Doe Defendants during discovery and to file a notice containing the information with the court. Once a Doe Defendant has been identified, the Court will order that he or she be served with a copy of the complaint in their individuals. Failure to identify a Doe defendant by the conclusion of discovery will result in the dismissal of all claims against that defendant.

(5) The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(6) Defendants shall file a response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If Defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules.

(7) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(8) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(9) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(10) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(11) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

(12) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendants' counsel by regular mail.

             /s/
            Michael P. Shea
            United States District Judge

**SO ORDERED** this 18th day of April 2025, at Hartford, Connecticut.